UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FARES KARADSHEH,

    Plaintiff,

v.                                                        Case No. 1:08-cv-988
                                                        Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

    _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on February 1, 1958, and completed the 12th grade (AR 72, 83).[1] He alleged a disability onset date of January 3, 2003 (AR 72). Plaintiff had previous employment as an assembler (AR 79). Plaintiff identified his disabling conditions as heart disease (post surgery), degenerative disc disease of the lower back, and back pain (AR 78). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 29, 2008 (AR 16-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff was insured for benefits through June 30, 2008, and that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 3, 2003 (AR 18). At step two, the ALJ found that during this insured period, plaintiff suffered from severe impairments of: ankylosing spondylitis; degenerative disc disease of lumbar and thoracic spine; and coronary artery disease (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 18). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform the following work related activities:

> lift/carry 20 pounds, occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour workday; stand/walk 2 hours in an 8 hour workday; occasional climbing of ramps and stairs and no climbing of ladders, scaffolds and ropes; occasional stooping, kneeling, crouching or crawling; avoid concentrated exposure to heat, extreme coldness or wetness.

(AR 19). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work in the regional economy (identified as Michigan), including machine operator (3,000 jobs) and assembler (3,000 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 22).

## III. ANALYSIS

Plaintiff raises three issues on appeal.

### A. The ALJ improperly evaluated a treating physician's opinion and recent medical evidence.

Plaintiff's first two issues are related. First, plaintiff contends that the opinion expressed by his treating physician, Scott Duemler, M.D., should have received controlling weight and that the ALJ erred in rejecting that opinion. Second, plaintiff contends that the ALJ's decision "admits uncertainty on how to evaluate the evidence and errs by not seeking additional information to reach the correct decision."

On October 22, 2007, Dr. Duemler completed an evaluation of plaintiff's ability to perform work-related activities (AR 229-34). The doctor opined that plaintiff could sit, stand or walk for 30 minutes without interruption and needed to change between sitting and standing "as needed" (AR 229). The doctor found that in an eight-hour workday, plaintiff could sit for two hours, stand for two hours and walk for two hours (AR 229). Plaintiff could frequently lift and carry 10 pounds and occasionally lift and carry twenty pounds (AR 229). Plaintiff could never stoop or climb ladders, scaffolds or ropes (AR 230). However, he could occasionally squat, kneel, climb ramps and stairs, crouch and crawl (AR 230). In addition, plaintiff had a number of environmental restrictions: he could never work at unprotected heights; and he could work only occasionally with dangerous moving machinery, in temperature extremes, with vibration and with motor vehicles (AR 231). The doctor observed that the radiology reports have consistently shown degenerative changes in the spine that reasonably explain plaintiff's symptoms, that "because his back hurts when he sits or stands, the patient needs to recline much of the day," and that plaintiff's pain interferes with his sleep causing "fatigue leading to day time napping" (AR 232). Finally, the doctor noted that

plaintiff had "elevated inflammatory mediators" and will see a rheumatologist for that condition (AR 232).

The ALJ rejected Dr. Duemler's opinion "because it is based upon the claimant's subjective complaints of pain which are not fully supported by the medical findings" (AR 20). In support of this conclusion, the ALJ pointed out plaintiff's treatment with Dr. Duemler in May 2005. On May 4, 2005, Dr. Duemler noted that he found it "hard to agree" with a finding of disability because of a lack of objective findings and because plaintiff had been able to work with the back pain for years (AR 20, 179). On May 6, 2005, Dr. Duemler's office noted that plaintiff had attempted only one session of physical therapy before quitting and that plaintiff did not put forth much effort (AR 20, 174). In addition, the ALJ referred to a letter dated October 30, 2006, in which Dr. Duemler stated that there was no nerve root or spinal impingement (AR 20). Finally, the ALJ relied upon plaintiff's treatment with Scott Ashcraft, D.O, a physician at Michigan Pain Consultants, P.C. The ALJ stated that in December 2005, Dr. Ashcraft felt that plaintiff's degenerative disc disease was "nothing dramatic" and recommended physical therapy and other conservative treatments (AR 20).

The ALJ also made a brief reference to a new diagnosis, made a few weeks before the administrative hearing:

> Most recently the claimant has been diagnosed with ankylosing spondylitis, an inflammatory condition of the spine that is associated with the claimant's reported ulcerative colitis of 10 years ago. It is unclear to the undersigned that this impairment causes any additional limitation to the claimant's functional abilities, as the inflammation (ankylosing) causes the same type of degeneration already noted by the claimant's treating physicians. In fact, it seems likely to the undersigned that the degenerative changes in his spine are the result of the (up until now) undiagnosed ankylosing spondylitis.

(AR 20).

6

The ALJ rejected Dr. Duemler's October 2007 opinion, stating that "Dr. Duemler is now simply accepting the claimant's complaints of pain and has limited him accordingly" (AR 20). Then, the ALJ adopted the limitations as set forth by the state agency physician on September 14, 2005 (AR 20, 191-99), limitations which are nearly identical to the ALJ's RFC determination (AR 19).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The court concludes that the ALJ failed to articulate good reasons for rejecting Dr. Duemler's opinion issued on October 22, 2007. The ALJ's rejection of this opinion is based upon isolated statements made by Dr. Duemler in May 2005 and October 30, 2006, and by Dr. Ashcraft in December 2005. A full review of the records paint a different picture of this plaintiff's medical history. First, while the ALJ observed the May 6, 2005 office note stating that plaintiff attended only one session of physical therapy, the ALJ did not mention that plaintiff also reported to the doctor that he could not afford physical therapy and was doing exercises (AR 174). Second, while the ALJ observed that Dr. Duemler's October 30, 2006 letter stated that plaintiff did not suffer from nerve root or spinal impingement, he failed to mention other conditions mentioned in the letter: that plaintiff had "significant abnormalities" in his recent lumbosacral spine x-rays in May 2005 (severe disc disease at L 1-2, moderated degenerative changes at L 2-3, and sclerosis along both sacroiliac joints); and that plaintiff underwent several treatments from Dr. Ashcraft for the pain (i.e., "multiple injections, including trigger-point, caudal, lumbar epidural, lumbar facet, and SI joint injections") (AR 227). Third, the ALJ's quotation from Dr. Ashcraft's December 16, 2005 report, i.e., that plaintiff's degenerative disc disease was "nothing dramatic," was taken out of context. Dr. Ashcraft's report summarized plaintiff's "radiologic workup" as follows: an MRI revealing some degenerative disc changes at L1-2 through L3-4 with no disc herniations, protrusions or stenosis or nerve impingement; an MRI of the thoracic spine which was unremarkable except for some degenerative disc changes at multiple levels; and "[l]umbar spine films [which] revealed some SI joint chronic disease and some other chronic lumbar disease, but nothing dramatic" (AR 219). Dr. Ashcraft recommended "hands-on" physical therapy, evaluation and treatment of plaintiff's

8

thoralumbar area discomfort, placing plaintiff on ibuprofen 800 mg up to three times a day, and use of a TENS unit (AR 219).

Finally, the ALJ's review of the medical record was incomplete. The ALJ performed only the most cursory review of Dr. Duemler's most recent treatment notes from December 2005 through August 2007 (AR 208-18). Conspicuously absent from the ALJ's decision is a discussion of the November 27, 2007 report of the rheumatologist, Aaron Eggebeen, M.D., regarding plaintiff's newly diagnosed condition of ankylosing spondylitis (AR 236-37).[2] Dr. Eggebeen made the following finding:

> Ankylosing spondylitis related to inflammatory bowel disease - I do believe he has sacroiliitis on previous imaging with a history of ulcerative colitis and chronic back pain. Some of his symptoms are inflammatory. However, he has superimposed degenerative changes as well. History of ulcerative colitis, currently inactive.

(AR 237).

Plaintiff contends that the ALJ engaged in speculation regarding the relationship between the newly diagnosed condition and the degenerative changes in his spine. The court agrees. Plaintiff's new diagnosis of ankylosing spondylitis does not, in and of itself, establish a disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of a condition, such as arthritis, "says nothing about the severity of the condition"). *See also McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual"). However, in this case, the new diagnosis merits

---

[2] Plaintiff's administrative hearing was held on November 7, 2007 (AR 243). The ALJ was aware that plaintiff would be referred to a specialist regarding the arthritis (AR 281-83). Plaintiff's counsel submitted the rheumatologist's report to the ALJ on or about December 7, 2007 and it was incorporated into the administrative record as Exhibit 12 F (AR 2, 235).

further investigation by the Commissioner. The ALJ admitted that the record is unclear with respect to the limitations caused by the ankylosing spondylitis (AR 20). In addition, the ALJ's belief that this newly diagnosed condition "likely" caused the degenerative changes in plaintiff's spine appears unsupported by any evidence. The ALJ may not substitute his medical judgment for that of plaintiff's physicians. *See Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). Furthermore, the diagnosis could provide objective medical evidence to support both Dr. Duemler's opinion and plaintiff's complaints of chronic, disabling pain.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should undertake a thorough review of plaintiff's treatment as documented from 2005 through 2007, and re-evaluate Dr. Duemler's opinion in light of the treatment notes and Dr. Eggebeen's opinion.

### B. The decision's credibility evaluation is not supported by substantial evidence.

Next, plaintiff contends that the ALJ failed to properly evaluate his credibility. The court agrees. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective

allegations, the ALJ's personal observations, and the objective medical evidence contradict). An ALJ's credibility determinations are accorded deference and not lightly discarded. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (a court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason"). "In sum, while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In this case, the ALJ applied the two-part analysis to determine whether plaintiff suffered from disabling symptoms (AR 19). *See Rogers*, 486 F.3d at 249 ("Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain").[3] Under the first part of the analysis, "the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* at 247. Under the second part of the analysis

> [I]f the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

---

[3] This analysis appears in 20 C.F.R. §§ 404.1529 (applicable to DIB claims under Title II) and 416.929 (applicable to supplement security income claims under Title XVI). *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 835 (6th Cir. 2005).

11

*Id.* Finally, Social Security Ruling 96-7p requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. "In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ determined that plaintiff did not meet the first part of the analysis. The ALJ summarized plaintiff's testimony regarding his symptoms as "chronic, unremitting pain throughout his back if he does too much as well as chest pain" (AR 19). Then, the ALJ found that plaintiff had a medically determinable physical impairment of degenerative disc disease in the thoracic and lumbar spine, "some of it relatively severe" (AR 19). Based upon these findings, the ALJ concluded that while plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" (AR 19).

The ALJ's credibility determination is flawed because his credibility determination is not supported by substantial evidence. As the court discussed in § III.A., *supra*, the ALJ did not properly evaluate plaintiff's medically determinable impairments. Accordingly, after the Commissioner determines plaintiff's underlying medically determinable physical impairments on remand, he should determine the credibility of plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: November 3, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).